UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Leon Henry Carter, III,                                          No. 14-cv-98 (MJD/LIB)

        Plaintiff,

                                      **ORDER AND**
v.                                                              **REPORT AND RECOMMENDATION**

Ralph Clark, et al.,

        Defendants.

_____

This matter comes before the undersigned United States Magistrate Judge upon Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6), [Docket No. 12]; Plaintiff's Motion to Compel Discovery, [Docket No. 19]; and Plaintiff's Motion to Strike, [Docket No. 22]. This case has been referred to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 72.1.

For reasons articulated herein, the Court recommends **GRANTING** Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6), [Docket No. 12]. As a direct result thereof, the Court **DENIES as moot** Plaintiff's Motion to Compel Discovery, [Docket No. 19]; and **DENIES as moot** Plaintiff's Motion to Strike, [Docket No. 22].

I.        **STATEMENT OF ALLEGED FACTS**

Plaintiff Leon Henry Carter, III ("Plaintiff"), an inmate currently housed at Minnesota Correctional Facility – Faribault, proceeding *pro se*, initiated the present lawsuit on or about January 9, 2014, against Defendants Ralph Clark, Plastech Industries, and Plastech Corporation. (Compl. [Docket No. 1]). Plaintiff's claims arise from events alleged to have occurred between February 2010 and November 2011, concerning Plaintiff's prison employment position with Plastech Industries and Plaintiff's subsequent termination therefrom. (Id. ¶¶ 1, 29).

Plastech Industries is a division of Plastech Corporation, a private Minnesota corporation. (Id. ¶¶ 30-31, 36). "At all times material herein, Plastech Corporation was and is a Minnesota [c]orporation that was and is leasing the [S]tate of Minnesota, Rush City correctional facility industrial building for the purpose of establishing and operating a factory and/or commercial enterprise commonly referred to and/or named Plastech Industries under Minn. Stat. § 243.88, [s]ubd. 1-2." (Id. ¶ 38). Defendant Ralph Clark is a managing supervisor at the Plastech Industries plant. (Id. ¶ 19). Plaintiff alleges that in the course and eventual termination of his position with Plastech Industries, Defendants discriminated against Plaintiff on the basis of his race, in violation of federal civil rights law and the Minnesota Human Rights Act. (Id. ¶ 70). Plaintiff alleges eight (8) causes of action against Defendants, including one count of racial discrimination in violation of 42 U.S.C. § 1981; one count of gross negligence; one count of gross negligence: hiring, training, monitoring, supervising; one count of violation of the Minnesota Human Rights Act; one count of aiding and abetting violation of the Minnesota Human Rights Act; one count of discriminatory reprisal in violation of the Minnesota Human Rights Act; one count of intentional interference with contractual relations; and one count of violation of the Equal Protection Clause (Fourteenth Amendment) in violation of 42 U.S.C. § 1983. (Id. at Counts I-VIII). Plaintiff sues Defendant Clark in his individual capacity and Defendants Plastech Industries and Plastech Corporation pursuant to the theory of *respondeat superior*. (Id. ¶¶ 20, 42).

In support of his claims, Plaintiff alleges that in February 2010, Defendant Plastech Industries hired Plaintiff as a "general laborer." (Id. ¶ 3). Plaintiff alleges that he signed various contracts with Plastech Industries with respect to his employment position. (Id.) Prior to his termination, Plaintiff received favorable, above average quarterly work performance evaluations

from Defendant Clark and others. (Id. ¶ 4, Ex. 3). Defendant Clark served as Plaintiff's work supervisor and assigned day-to-day work assignments to the Plastech employees. (Id. ¶ 5). Plaintiff alleges that Defendant Clark often assigned the harder, less desirable, more laborious positions to Plaintiff and other African American employees. (Id.) Plaintiff alleges that as a result of Defendant Clark's race-based assignments, Plaintiff's and other black employees' "quotas" – upon which job performance was ultimately evaluated – began to fall. (Id. ¶¶ 7-8).

On April 15, 2011, Plaintiff was laid-off, "on the pretense that there was not enough work," although Plaintiff alleges that the layoff was ultimately motivated by racism. (Id. ¶ 9). Plaintiff alleges that regardless, he continued to receive very favorable performance evaluations. (Id.) Plaintiff alleges that he "would not have been laid off had he been a similarly situated White employee[.]" (Id.)

Plaintiff returned to work in September 2011, after lodging "many" complaints regarding his discriminatory layoff. (Id. ¶ 10). However, when Plaintiff returned to work, Defendant Clark refused to instruct, assist, or otherwise communicate with Plaintiff. (Id. ¶ 11). On one particular occasion, Defendant Clark gave Plaintiff an "undesirable" work assignment that another employee had refused, despite the fact that Plaintiff voiced his preference to receive an assignment elsewhere. (Id. ¶ 12). As a result of Defendant Clark's undesirable assignment and "sabotage" by another employee, Plaintiff was forced to "just sit around" for an hour, resulting in Plaintiff's suspension. (Id.) Defendant Clark ultimately terminated Plaintiff for "just sitting around" on November 17, 2011. (Id.)

Plaintiff alleges that Defendant Clark treated Plaintiff less favorably than non-minority employees who were allowed to decline "undesirable" work assignments. (Id.) Plaintiff alleges that Defendant Clark's "differential treatment towards [Plaintiff] was not the result of a

3

legitimate purpose but of an illegitimate desire to get rid of [Plaintiff] because [Plaintiff] had complained of discrimination and filed a lawsuit against [Defendant Clark]." (Id. ¶ 13). Plaintiff alleges that white workers were given an advantage over black workers, and that "[a]t all times material herein, [Defendants] failed to have the necessary policies, practices, customs, procedures, training, or oversight to avoid the possible discrimination by its officers, managers, and employees including [Defendant Clark]." (Id. ¶ 54).

## II.   DEFENDANTS' MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), [DOCKET NO. 12]

Defendants Ralph Clark, Plastech Industries, and Plastech Corporation collectively move the Court for an order dismissing Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing (1) Plaintiff has failed to state a claim upon which relief may be granted; (2) the doctrines of collateral estoppel and *res judicata* bar Plaintiff's claims; (3) Plaintiff's claims are virtually identical to claims that Plaintiff has already litigated and that a state court has already adjudicated on the merits; and (4) the Court should declare Plaintiff a "frivolous litigant." (See [Docket Nos. 12, 14]).

### A.   Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. In evaluating a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, "[courts] look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998)), cert. denied 525 U.S. 1178 (1999). Courts draw all reasonable inferences in favor of the nonmoving party. See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Twombly, 550 U.S. at 556-67. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 664.

Courts must undertake the "context-specific task" of determining whether the plaintiff's factual allegations "nudge" its claims against the defendant "across the line from conceivable to plausible." See id. at 679-81. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.; see also Farnam Street Fin., Inc. v. Pump Media, Inc., No. 09-cv-233 (MJD/FLN), 2009 WL 4672668, at *3 (D. Minn. Dec. 8, 2009) (citing Iqbal, 556 U.S. at 678).

Even considering the liberal construction Courts afford *pro se* pleadings, the facts alleged in a *pro se* complaint must state a claim for relief as a matter of law. Sorenson v. Minnesota Dep't of Corr., No. 12-cv-1336 (ADM/AJB), 2012 WL 3143927, at *2 (D. Minn. Aug. 2, 2012) (citing Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980)). "Though pro se complaints

are to be construed liberally, they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (citations omitted). See, e.g., Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded"); Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law."). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

The Eighth Circuit has long held that *res judicata* may be properly raised on a Rule 12(b)(6) motion to dismiss:

> Res judicata is an affirmative defense. Before adoption of the Federal Rules of Civil Procedure, we recognized that a defense of res judicata may be raised in a motion to dismiss when the identity of the two actions can be determined from the face of the petition itself. And under the Federal Rules, we have implicitly endorsed the use of a motion to dismiss to raise res judicata. Indeed, [i]f an affirmative defense . . . is apparent on the face of the complaint . . . that [defense] can provide the basis for dismissal under Rule 12(b)(6). Our interpretation of the phrase face of the complaint . . . include[s] public records and materials embraced by the complaint, and material[s] attached to the complaint[.]

C.H. Robinson Worldwide, Inc. v. Lobrano, 695 F.3d 758, 763-64 (8th Cir. 2012) (internal quotation marks and citation omitted). "Generally a motion to dismiss under Rule 12(b)(6) must be treated as a motion for summary judgment if matters outside the pleadings are presented to and not excluded by the court[;]" however, "the affirmative defense of res judicata may be raised in a motion to dismiss, if the applicability of res judicata is apparent on the face of the complaint." Magee v. Hamline Univ., 1 F. Supp. 3d 967 (D. Minn. 2014) (internal quotation

marks and citations omitted). Similarly, collateral estoppel may be an appropriate basis upon which a party may move for dismissal pursuant to Rule 12(b)(6). See, e.g., B & B Hardware, Inc. v. Hargis Indus., Inc., 569 F.3d 383 (8th Cir. 2009); Ripplin Shoals Land Co., LLC v. U.S. Army Corps of Engineers, 440 F.3d 1038 (8th Cir. 2006).

Significantly, courts may invoke the doctrines of *res judicata* and collateral estoppel *sua sponte*. Johnson v. LaSalle Bank Nat. Ass'n, 663 F. Supp. 2d 747, 765-66 (D. Minn. 2009); see Hanig v. City of Winner, S.D., 527 F.3d 674, 678 (8th Cir. 2008) (finding that the District Court had "properly invoked res judicata to avoid 'unnecessary judicial waste[.]'"), quoting Arizona v. California, 530 U.S. 392, 412, 120 S. Ct. 2304, 147 L.Ed.2d 374 (2000), and citing Bechtold v. City of Rosemount, 104 F.3d 1062, 1068 (8th Cir. 1997); Transclean Corp. v. Jiffy Lube Intern., Inc., 474 F.3d 1298, 1308 (Fed. Cir. 2007) ("Although the general rule is that claim preclusion and issue preclusion must be pleaded, an exception exists where all relevant data and legal records are before the court and the demands of 'comity, continuity in the law, and essential justice' mandate invocation of preclusion principles."), cert. denied, 552 U.S. 825, 128 S. Ct. 186, 169 L.Ed.2d 36 (2007); Scherer v. Equitable Life Assurance Society of United States, 347 F.3d 394, 400 (2d Cir. 2003) (Courts may assert *res judicata sua sponte*) (citations omitted); Meador v. McFaddin, 1999 WL 129938, at *1 (5th Cir. 1999) (noting that a Court may raise collateral estoppel *sua sponte*) (citations omitted), cert. denied, 531 U.S. 835, 121 S. Ct. 94, 148 L.Ed.2d 53 (2000); Doe v. Pfrommer, 148 F.3d 73, 80 (2d Cir. 1998) (finding that District Court did not error in raising collateral estoppel *sua sponte*).

### B.    Analysis

### 1.    Plaintiff's Relevant Prior Litigation

In August 2011, Plaintiff initiated a civil rights action against Defendant Ralph Clark,

alleging that Defendant Clark had violated Plaintiff's Eighth and Fourteenth Amendment rights by assigning Plaintiff "less desirable" work in the course of his prison employment and eventually terminating Plaintiff and replacing Plaintiff with a white inmate; although initiated in Minnesota state court (Chisago County), Defendant Clark removed the action to this Court. Carter v. Clark, No. 11-cv-2451 (RHK/LIB) (Order [Docket No. 24], at 1-2). "The essence of Carter's Complaint is that Clark assigned him to an unfamiliar and more difficult job and then laid him off, along with another minority inmate, meanwhile assigning easier tasks to white workers so they could 'move up in their quota[s] and escape the alleged layoff' and hiring white workers as replacements for Carter and the other laid-off minority inmate." (Id. at 2). Defendant Clark moved for judgment on the pleadings, alleging improper service, and the Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, granted Defendant Clark's motion, citing improper service, and dismissed Plaintiff's complaint without prejudice on December 9, 2011. (Id. at 3-5).

In March 2013, Plaintiff filed suit in Chisago County District Court, familiarly alleging violation of 42 U.S.C. § 1981; gross negligence; gross negligence: hiring, training; violation of Minn. Stat. § 363A.01; aiding and abetting; violation of 42 U.S.C. § 2000e; discriminatory reprisal in violation of Minn. Stat. § 363A.01; violation of Minn. Stat. §181.932; infliction of emotional distress; interference with contractual relations; violation of the Fourteenth Amendment (Equal Protection); and violation of the Fourteenth Amendment (Due Process) against Defendants Ralph Clark and Plastech Corporation. Carter v. Clark, Chisago County District Court No. 13-cv-12-668; (Kleffman Aff. Ex. F [Docket No. 15-6], Second Amended Compl.). Plaintiff's claims arose "out of a series of acts and omissions by Ralph Clark and Plastech beginning in the month of February 2010 through November 2012, in connection with

the pretextualized layoff and subsequent termination of [Plaintiff's] employment with Defendant Plastech, on the basis of his race, culminating in his layoff and subsequent termination for reasons wholly unrelated to any legitimate objection or rational basis[.]" (Kleffman Aff. Ex. F [Docket No. 15-6], Second Amended Compl. ¶ 1). Plaintiff alleged that in the course of his prison employment, Defendants placed Plaintiff in more difficult work positions and that, as a result, his quotas suffered. (Id. ¶¶ 6-9). Plaintiff alleged, "[Defendant Clark] concealed his true motivation under the pretense of a lack of work, [Defendant Clark] disguised his treatment and terminations of African American workers under a so-called quota scheme whereas the quota based system was manipulated in only rotating Black workers assignment positions daily in favor of placing the White workers in the best and most favorable assignment positions available leaving the only harder less favorable assignment works positions for the minority workers including [Plaintiff], until their so-called quota[s] fall well below the White workers." (Id. ¶ 52).

Defendants Clark and Plastech Corporation moved the Chisago County District Court for an order dismissing Plaintiff's claims pursuant to Rule 12 of the Minnesota Rules of Civil Procedure. Cater v. Clark, Chisago County District Court No. 13-cv-12-668, Findings of Fact, Conclusions of Law and Order (June 26, 2013) (Kleffman Aff. Ex. G [Docket No. 15-7]), at 1. The Chisago County District Court held a hearing on Defendants' motion on May 20, 2013; Plaintiff did not appear. Id. Upon consideration of the pleadings and papers filed therein, the Chisago County District Court granted Defendants' motion to dismiss and dismissed Plaintiff's complaint, amended complaint, and second amended complaint *with prejudice*. Id. at 6. In so dismissing, the court made the following findings of fact:

- At all material times, Plaintiff was an inmate of the State of Minnesota Department of Corrections, serving a long-term sentence for second-degree murder;

- Plaintiff's Second Amended Complaint alleged against Defendants Clark and Plastech Corporation alleged thirteen (13) causes of action: (1) willful violation of 42 U.S.C. § 1981; (2) gross negligence; (3) gross negligence: hiring, training, monitoring, and supervising; (4) willful violation of Minn. Stat. § 363A.01 *et seq.*; (5) aiding and abetting in violation of Minn. Stat. § 363A.01 *et seq.*; (6) willful violation of 42 U.S.C. § 2000e *et seq.*; (7) discriminatory reprisal in violation of Minn. Stat. § 363A.01 *et seq.*; (8) retaliatory discharge in violation of Minn. Stat. § 181.932 *et seq.*; (9) intentional infliction of emotional distress; (10) grossly negligent infliction of emotional distress; (11) intentional interference with contractual relations; (12) Equal Protection violation of the Fourteenth Amendment of the United States Constitution; and (13) Due Process violation of the Fourteenth Amendment of the United States Constitution;

- Plaintiff brought the action pursuant to 42 U.S.C. § 1983;

- Service of process of the Second Amended Complaint on the Defendants was effected on April 11, 2013;

- Plaintiff voluntarily dismissed six of his thirteen causes of action, including causes of action 5, 6, 8, 9, 10, and 13; and

- Plaintiff was never employed by Plastech Corporation; rather, MINNCOR Industries entered into a contract with Plastech Corporation in which MINNCOR Industries employed Plaintiff.

Id. at 1-3. The Chisago County District Court ultimately held that Plaintiff lacked standing to assert employment-related civil rights claims against Defendant Clark because Clark was not Plaintiff's employer. Id. at 3. More significantly, the court held that Plaintiff lacked standing to assert employment-related civil rights claims against private corporations and/or their employees

(i.e., Plastech and Defendant Clark) because prison employment programs do not create traditional employment relationships. Id. "When an inmate is working for a prison, in a program structured by the prison pursuant to state law requiring prisoners to work, the economic reality of the relationship between the prison and the entity for which work was performed lies in the relationship between the prison and the prisoner." Id. The court held that Plaintiff had no protected liberty or property interest in being assigned any particular job in the course of his prison employment. Id. at 4. The court held that Plaintiff had failed to state an actionable substantive due process claim, an actionable tort claim for negligent hiring/training/monitoring/supervising, an actionable claim under the Minnesota Human Right Act, or an actionable contract claim. Id. at 5-6. The court dismissed all of Plaintiff's claims. A review of available public records indicates that Plaintiff did not appeal the Chisago County District Court's decision.

> 2.      **Plaintiff's federal claims are barred by collateral estoppel.**

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411, 414, 66 L. Ed. 2d 308 (1980).

> In the Eighth Circuit, issue preclusion has five elements: "(1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment."

B & B Hardware, Inc., 569 F.3d at 387-88 (quoting Robinette v. Jones, 476 F.3d 585, 589 (8th Cir. 2007) (quoting, in turn, Anderson v. Genuine Parts Co., 128 F.3d 1267, 1273 (8th Cir. 1997))).

"The federal full faith and credit statute, 28 U.S.C. § 1738, require[s] federal courts to give the same preclusive effect to state-court judgments as the State from which the judgment emerged." Sanders v. Frisby, 736 F.2d 1230, 1231 (8th Cir. 1984). Accordingly, state court decisions preclude federal review of identical issues, as "res judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system." Allen, 449 U.S. at 95-96. Federal civil rights claims brought pursuant to Section 1983 are no exception, save in instances in which the party against whom the earlier state court decision is asserted did not have a full and fair opportunity to litigate the claim before the state court.[1] Id. The United States Supreme Court has held,

> [N]othing in the language or legislative history of § 1983 proves any congressional intent to deny binding effect to a state-court judgment or decision when the state court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to

---

[1]      [T]he federal courts could step in where the state courts were unable or unwilling to protect federal rights. This understanding of § 1983 might well support an exception to res judicata and collateral estoppel where state law did not provide fair procedures for the litigation of constitutional claims, or where a state court failed to even acknowledge the existence of the constitutional principle on which a litigant based his claim. Such an exception, however, would be essentially the same as the important general limit on rules of preclusion that already exists: Collateral estoppel does not apply where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court. But the Court's view of § 1983 in *Monroe* lends no strength to any argument that Congress intended to allow relitigation of federal issues decided after a full and fair hearing in a state court simply because the state court's decision may have been erroneous.

Allen v. McCurry, 449 U.S. 90, 101, 101 S. Ct. 411, 418, 66 L. Ed. 2d 308 (1980) (internal citations omitted).

litigate federal claims, and thereby has shown itself willing and
able to protect federal rights.

Id. at 103-04. Individuals asserting federal rights do not have an unrestricted opportunity to

litigate such issues in federal court when the issue has already been decided in state court; the

Supreme Court has explicitly declined to recognize a universal right to litigate a federal claim in

federal court. Id. at 105. See e.g., Kremer v. Chem. Const. Corp., 456 U.S. 461 (1982) (holding

that the federal district court was required to give preclusive effect to a state court judgment

upholding an administrative agency's rejection of an employment discrimination claim; the state

court judgment barred the Title VII action from adjudication in federal court).

In the present case, Plaintiff alleges two federal claims arising from his prison

employment: racial discrimination in violation of 42 U.S.C. § 1981; and violation of the Equal

Protection Clause of the Fourteenth Amendment, alleged pursuant to 42 U.S.C. § 1983. The

Court finds that Plaintiff alleged virtually *identical* Section 1981 and 1983 claims in his March

2013 Chisago County state court action, based on and arising from *identical* factual

circumstances concerning his prison employment with Plastech Industries.

Plaintiff recognizes and concedes that he initiated an action in Chisago County District

Court alleging claims pursuant to 42 U.S.C. §§ 1981 and 1983. (Pl.'s Opp. Mem. [Docket No.

24], at 15-16). Plaintiff does not contend that his state court claims are in any way

distinguishable from the claims now before the Court; rather, Plaintiff argues that the state court

determinations are "not conclusive in this action" because Plaintiff's claims have not been

resolved on their merits in *federal* court. (Id. at 16). While it is the case that none of Plaintiff's

claims have been adjudicated on their merits in federal court, it is *not* the case that the Chicago

County District Court's determinations have no bearing on Plaintiff's claims now before the

Court. As articulated above, federal courts give preclusive effect to state court judgments whenever the courts of the state from which the judgments emerged would do so.

In the Eighth Circuit and under Minnesota state court law, collateral estoppel applies and courts give preclusive effect to prior judgments when:

> (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

State v. Lemmer, 736 N.W.2d 650, 659 (Minn. 2007); B & B Hardware, Inc., 569 F.3d at 387-88. In the present case, the Court finds that Plaintiff's present Section 1981 and 1983 claims are identical to those alleged in the Chisago County litigation; that Plaintiff was a party to the prior litigation; and that nothing in the present record before the Court indicates or otherwise suggests that Plaintiff did not have a full and fair opportunity to be heard on these claims in the prior Chisago County litigation. Most significantly, the Chisago County District Court adjudicated Plaintiff's federal claims on the merits, dismissing both the Section 1981 claim and the Section 1983 claim *with prejudice* for failure to state a claim upon which relief may be granted; the Court held that Plaintiff did not have standing to bring either claim. Cater v. Clark, Chisago County District Court No. 13-cv-12-668, Findings of Fact, Conclusions of Law and Order (June 26, 2013) (Kleffman Aff. Ex. G [Docket No. 15-7]), at 3-5. As the United States Supreme Court has held, Congress did not intend to allow relitigation of federal issues decided after a full and fair hearing in a state court, even if the state court's decision may have been erroneous. Allen, 449 U.S. at 101. The Court finds that the Chisago County District Court's June 26, 2013, decision is a valid and final judgment of Plaintiff's federal civil rights claims on their merits, as

the Minnesota Rules of Appellate Procedure bar any further litigation of Plaintiff's Chisago

County action. Minn. R. App. P. 104.01-02.

The Court finds that collateral estoppel bars Plaintiff's Section 1981 and 1983 claims

from further adjudication, and, accordingly, the Court recommends **GRANTING** Defendants'

Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6), [Docket No. 12], with

respect to Plaintiff's federal claims.

### 3.    The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims.

Because the Court recommends granting Defendants' Motion to Dismiss Under Federal

Rule of Civil Procedure 12(b)(6), [Docket No. 12], with respect to Plaintiff's federal claims, the

Court also recommends declining to exercise supplemental jurisdiction over the remaining state

law claims. See Gregoire v. Class, 236 F.3d 413, 419-20 (8th Cir. 2000) (stating federal courts

should exercise judicial restraint and avoid state law issues whenever possible).

### 4.    Even if the Court were to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, they are barred by *res judicata*.

"Under res judicata, a final judgment on the merits of an action precludes the parties or

their privies from relitigating issues that were or could have been raised in that action." Allen,

449 U.S. at 94. "Although issue preclusion bars parties from relitigating only those issues that

were actually litigated and necessary to the outcome of a prior judgment, the claim preclusion

aspect of res judicata bars claims that were or could have been litigated in the earlier

proceeding." Magee, 1 F. Supp. 3d 967. See also Brown v. Felsen, 442 U.S. 127, 131, 99 S. Ct.

2205, 60 L.Ed.2d 767 (1979) ("Res judicata prevents litigation of all grounds for, or defenses to,

recovery that were previously available to the parties, regardless of whether they were asserted

or determined in the prior proceeding.").

Because Plaintiff has previously litigated claim arising from the exact factual scenario at issue in the present case, the Court finds that even if it were to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, it would recommend finding that *res judicata* bars their adjudication. Plaintiff had a full and fair opportunity to litigate claims arising from the alleged employment events of February 2010 through November 2011 in Chisago County.

## III.   PLAINTIFF'S REMAINING MOTIONS, [DOCKET NOS. 19, 22]

Because the Court considered and recommends granting Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6), [Docket No. 12], Plaintiff's Motion to Compel Discovery, [Docket No. 19], and Plaintiff's Motion to Strike, [Docket No. 22], are **DENIED as moot**.

## IV.   CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein,

### IT IS HEREBY RECOMMENDED:

That Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6), [Docket No. 12], be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED with prejudice**.

### IT IS HEREBY ORDERED:

1. That Plaintiff's Motion to Compel Discovery, [Docket No. 19], is **DENIED as moot**; and

2. That Plaintiff's Motion to Strike, [Docket No. 22], is **DENIED as moot**.


Dated: October 30, 2014                                          s/Leo I. Brisbois
                                                                 Leo I. Brisbois
                                                                 U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by November 13, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by November 28, 2014**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.